# United States District Court

_____SOUTHERN_____ DISTRICT OF _____FLORIDA_____

UNITED STATES OF AMERICA

FILED by _____ D.C.

V.

JUN 2 6 2000

JOSE SILVIO VIGNOLO and
YAAKOV ASSARAF

CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

**CRIMINAL COMPLAINT**

CASE NUMBER: 00-4157-SNOW

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. From in or about <u>March 2000 to the present</u> in <u>Broward</u> county, in the <u>Southern</u> District of <u>Florida</u> defendant(s) did, (Track Statutory Language of Offense)

knowingly and willfully combine, conspire, confederate and agree with each other to commit offenses against the United States, that is, to violate Title 18, United States Code, Section 1546, through the making, uttering, use, attempted use, possession, and acceptance of documents prescribed by statute for entry into or as evidence of authorized stay and employment in the United States, knowing the documents to be forged, counterfeited, altered and falsely made; and did make, utter, use, attempt to use, possess and accept documents prescribed by statute for entry into and as evidence of authorized stay and employment in the United States, knowing them to be forged, counterfeited, altered and falsely made;

in violation of Title <u>18</u> United States Code, Section(s) <u>371 and 1546</u>

I further state that I am a(n) <u>Special Agent, INS</u> and that this complaint is based on the following
                                     Official Title
facts:

Please see attached affidavit.

Continued on the attached and made a part hereof:   [x] Yes  [ ] No

Signature of Complainant
Richard S. Bendel, Special Agent
Immigration and Naturalization Service

Sworn to before me, and subscribed in my presence,

June 26, 2000                                        at   Fort Lauderdale, Florida
Date                                                      City and State

LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE                            Lurana S. Snow
Name and Title of Judicial Officer                        Signature of Judicial Officer

## AFFIDAVIT

I, Richard S. Bendel, being duly sworn, depose and say:

1. I am a Special Agent of the U.S. Immigration and Naturalization Service (INS), and have been so employed since December of 1996. I am presently assigned to the Miami District Office and have been since September of 1997. Prior to that I was assigned to the INS Tampa, Florida Office. As an INS Special Agent I am responsible for the investigation of violations of United States law, including violations of Titles 8 and 18, United States Code, and violations of the Immigration and Nationality Act.

2. This affidavit is submitted in support of a criminal complaint against Jose Silvio VIGNOLO (a.k.a. Silvio VIGNOLO, hereinafter referred to as VIGNOLO), and Yaakov ASSARAF (a.k.a. "Kiko" a.k.a. Yaakov SAFRA, hereinafter referred to as ASSARAF). As set forth below, I have probable cause to believe that VIGNOLO and ASSARAF have engaged in a conspiracy to make, utter, use, attempt to use, possess, or accept documents prescribed by statute for entry into or as evidence of authorized stay or employment in the United States, knowing the documents to be forged, counterfeited, altered, or falsely made, in violation of Title 18, United States Code, Sections 371 and 1546.

3. The specific documents that these individuals are dealing in include INS Forms I-94, Arrival/Departure Record, and INS Forms I-766, Work Authorization Permits. INS Form I-94 is a form which documents an alien's authorized entry into the U.S., the class of admission, and the port of entry. This information is placed on

the I-94 by handheld stamps that are security-controlled and issued only for use by authorized INS Officers. An authorized INS Officer may also note in handwriting the class of admission and the length of authorized stay in the U.S. on the I-94. The I-94 can also document employment authorization for the alien. INS Form I-766 is a card that authorizes an alien to be lawfully employed in the U.S. The I-766 documents the alien's name, alien registration number, date of birth, country of birth, and category of alien status. The INS is the only legally authorized manufacturer and issuer of the I-766.

4. The investigation has revealed that VIGNOLO and ASSARAF are selling false and forged INS Forms I-94 and INS Forms I-766 to aliens. Additionally, the investigation has revealed that aliens attempting to legitimize their immigration status in the United States have been defrauded by VIGNOLO as VIGNOLO falsely holds himself out to be a licensed attorney. Further, VIGNOLO's firm, "Vignolo and Associates" has entered appearances as an attorney in immigration proceedings for at least thirty-five (35) aliens.

5. As set forth more fully below, VIGNOLO and ASSARAF have provided several aliens with fraudulent immigration documents in return for money. At least three aliens from whom false immigration documents have been seized have identified VIGNOLO from a photo lineup as the person who provided them the false documents. At least four aliens from whom false immigration documents have been seized have identified ASSARAF from a photo lineup as the person who provided them with the false documents.

Relevant Criminal Statutes

7. Title 18 USC Section 1546 prohibits the making, utterance, use, attempt to use, possession, or acceptance of any document prescribed by statute for entry into or as evidence of authorized stay or employment in the United States, knowing it to be forged, counterfeited, altered, or falsely made.

8. Title 18 USC Section 371 prohibits two or more persons conspiring to commit an offense or to defraud the United States.

Current Investigation

9. On April 6, 2000, the manager of the Social Security Administration (SSA) office in Pompano Beach, Florida, requested that a Special Agent from the Office of Inspector General for the SSA (SSA/OIG) respond to his office in reference to several individuals applying for Social Security cards using fraudulent immigration documents.

10. The SSA-OIG agent requested the assistance of Special Agents from the Fraud Unit of the INS Miami District Office who responded to the SSA office in Pompano Beach, Florida.

11. Two of the individuals who were presenting false immigration documents were SOI #4 and SOI #5, both citizens of Korea. Their passports revealed, and INS record checks confirmed, that they had last entered the U.S. on November 3, 1999, with the class of admission of nonimmigrant visitors with authorization to remain in the U.S. for no longer than six (6) months. In their possession were fraudulent INS Form I-94s that they had used as documentation to apply for a Social Security card for their child.

12. Two other Social Security card applicants were interviewed and are identified herein as SOI #6 and SOI #7, both citizens of Romania. INS record checks confirmed that both aliens had been admitted as nonimmigrant visitors but had stayed in the U.S. past the time allowed. In their possession were fraudulent INS Form I-766s that they used as documentation to apply for Social Security cards.

13. The four applicants were transported to the INS Miami District office for further interviews and processing. The four applicants waived their Miranda rights and gave statements as to how they obtained the fraudulent documents.

14. SOI #4 stated in a written sworn statement that he had met a man to whom he had paid $600 to in exchange for the fraudulent INS Form I-94s for him and his wife, SOI #5. SOI #4 stated he did not know the man's name, but would be able to identify him.

15. SOI #6 stated in a written sworn statement that he had met a man named "Kiko" who had asked him and his friend, SOI #7, if they needed any immigration documents. "Kiko" gave him a telephone number, (954) 249-6940, to call when they were ready to purchase the immigration documents. In November, 1999, SOI #6 paid $3,000 to "Kiko" for immigration documents that would allow him to get a valid Social Security card.

16. Records reveal that SOI #6 used the address of 4699 N. Federal Highway, #102G, Pompano Beach, FL 33064, as his mailing address on an application for a Social Security card. A false INS Form I-94 was used in support of that application. That address has been VIGNOLO's office address for at least the last year and a half.

17. SOI #6 also stated in his written sworn statement that at some unknown date "Kiko" had told him that the I-94 wasn't any good and "Kiko" would have to give him a plastic card to replace it. SOI #6 stated that earlier on the day of April 6, 2000, he and SOI #7 went to a business plaza where they met with "Kiko", his friend ABOHAZIRA, and SOI #4 and SOI #5. "Kiko" gave SOI #6 and SOI #7 each a plastic card, later identified as a fraudulent INS Form I-766. "Kiko" instructed them to follow his friend ABOHAZIRA to the Social Security office in Pompano Beach and apply for their Social Security cards.

18. SOI #7 stated under oath the same information as SOI #6. SOI #7 stated that they had originally met "Kiko" outside the office of the attorney who had filed a visa extension request with the INS on their behalf in May, 1999. According to INS records, Jose S. Vignolo, 4699 N. Federal Highway, #102G, Pompano Beach, FL 33064, submitted the visa extension requests for SOI #6 and SOI #7. According to SOI #7, "Kiko" instructed them to use VIGNOLO's office address on their Social Security card applications.

19. SOI #7 had in his possession the fraudulent INS Form I-94 that he had received from "Kiko" prior to receiving the fraudulent INS Form I-766. At a later date, INS agents recovered the fraudulent INS Form I-94 given to SOI #6 by "Kiko".

20. SOI #4, SOI #6, and SOI #7 were later shown a photo lineup containing a photograph of ASSARAF. All three identified ASSARAF as "Kiko", the man who provided them the seized fraudulent INS Form I-94s and INS Form I-766's.

21. On May 16, 2000, an alien named Clinton George McLENNON was arrested in connection with this case. McLENNON was identified as having sold a false INS Form I-94 to another alien.

22. McLENNON was advised of his Miranda warnings and agreed to make a statement. McLENNON also agreed to a consent search of his residence. Found in the search was a fraudulent INS Form I-766 work authorization card bearing his name and photograph. McLennon stated that he purchased the INS Form I-766 from a person known to him as "Kiko" for $500. McLENNON was shown a photo lineup that included a photograph of ASSARAF. McLennon identified ASSARAF as "Kiko." McLENNON also admitted to obtaining the false INS Form I-94 he sold to another alien from "Kiko."

23. On May 19, 2000, SOI #1 provided information regarding a person holding himself out to be an attorney and providing fraudulent INS Form I-94's to aliens. SOI #1, who is an alien, related the following information:

   SOI #1 heard from an acquaintance that an attorney by the name of Silvio VIGNOLO could provide him/her with assistance in obtaining a religious visa. SOI #1 went to VIGNOLO's offices at 4699 N. Federal Highway, Suite 102G, Pompano Beach, Florida, where he/she met with VIGNOLO. SOI #1 paid VIGNOLO $2,000 for assistance in obtaining a religious visa. VIGNOLO had a certificate purportedly from the Connecticut State Bar displayed on his office wall which identified him as a member of the Connecticut State Bar Association. VIGNOLO falsely told SOI #1 that the INS has leftover work permits at the end of the year that the INS gives out to immigration lawyers. On December 13, 1999,

6

SOI #1 again met with VIGNOLO at VIGNOLO's offices. SOI #1 paid VIGNOLO an additional $2,000 to complete his/her adjustment of alien status case. VIGNOLO gave SOI #1 a receipt for that amount. VIGNOLO obtained SOI #1's passport from SOI #1. On January 5, 2000, SOI #1 again met with VIGN0LO at VIGNOLO's offices. VIGNOLO returned SOI #1's passport to SOI's, which now contained what has been determined to be a fraudulent INS Form I-94, numbered 192382686 07, stapled into the passport. VIGNOLO told SOI #1 to go to the Social Security Administration office located on Hillsboro Boulevard in Deerfield Beach, Florida, to apply for a Social Security card. SOI #1 went the Social Security office and applied for a Social Security card using the INS Form I-94 received from VIGNOLO. Approximately one (1) to two (2) weeks later SOI #1 received a Social Security card from the Social Security Administration.

24. SOI #1 provided the Affiant with a letterhead for VIGNOLO which lists him as an Attorney at Law, and his address as 4699 N. Federal Highway, 102G, Pompano Beach, Florida, 33064.

25. SOI #1 was shown a photo lineup that included a photograph of VIGNOLO. SOI #1 identified the picture of VIGNOLO as the person that SOI #1 hired as an immigration lawyer and paid $4,000 for assistance in obtaining legal immigration status in the United States. SOI #1 also stated that VIGNOLO was the person that provided SOI #1 the INS Form I-94 work authorization permit in January 2000 that has been determined to be fraudulent.

26. On May 30, 2000, I apprehended an alien (SOI #2) in possession of a fraudulent INS Form I-94 similar to the I-94 seized from SOI #1. SOI #2 was shown a photo

lineup which included a photograph of VIGNOLO. SOI #2 identified the picture of VIGNOLO as the person that supplied him/her with the fraudulent I-94. SOI #2 related the following information:

In early 1999, SOI #2 received information that VIGNOLO could obtain Social Security cards. SOI #2 received a business card from an unknown source which listed VIGNOLO as an attorney. SOI #2 contacted VIGNOLO by telephone. VIGNOLO stated that he could get SOI #2 a Social Security card for $2,500. On October 20, 1999, SOI #2 met with VIGNOLO at his offices located at 4699 N. Federal Highway, Suite 102G, Pompano Beach, Florida. SOI #2 paid VIGNOLO $1,250 with a personal check from SOI #2's checking account. VIGNOLO took SOI #2's passport. Approximately two (2) months later, SOI #2 again met with VIGNOLO at VIGNOLO's offices. At that time, SOI #2 received his/her passport from VIGNOLO, which now contained what has been determined to be a fraudulent INS Form I-94. VIGNOLO instructed SOI #2 to go to a Social Security Administration office to apply for a Social Security card. When SOI #2 went to a local Social Security office to apply for a Social Security card, the Social Security Administration clerk handling SOI #2's application told SOI #2 that his/her INS Form I-94 was fraudulent.

27. On June 2, 2000, I met with SOI #3, an alien who had obtained a fraudulent residency and work authorization permit from VIGNOLO in 1997. The permit is in the form of a fraudulent INS ADIT stamp in SOI #3's passport. SOI #3's meetings with VIGNOLO took place at a restaurant near VIGNOLO's present office. SOI #3 was shown a photo lineup which contained a photograph of

VIGNOLO. SOI #3 identified the picture of VIGNOLO as the person that he/she hired as an immigration lawyer and paid $2,500 for what has been determined to be a fraudulent residency/work authorization stamp placed in SOI #3's passport.

28. A Social Security Administration anti-fraud program has identified over twenty-five (25) aliens who have used INS Form I-94's similar to the I-94's seized from SOI #1, #2, #4, #5, #6, #7, and from other aliens apprehended during this investigation. Similarities in the documents include the admission stamp, the employment authorization stamp, and extraneous stamped printing on the card.

29. VIGNOLO's firm, "Vignolo and Associates" is listed as the attorney or representative for at least thirty-five (35) aliens with petitions for change of immigration status filed with the INS Southern Service Center. The INS Southern Service Center is the location where petitions for change in immigration status are adjudicated by the INS for this region.

30. I have received and reviewed four (4) INS Form G-28's (Notice of Entry of Appearance as Attorney or Representative) that "Vlignolo & Associates" have apparently submitted to the INS Southern Service Center. In all four cases, there is a signed attestation on the form that the person signing for "Vignolo and Associates" is an attorney and a member in good standing of the bar of the Supreme Court in New York and that they are not under a court or administrative agency order restricting their practice of law. The signature that appears on at least one of these forms appears to be identical to VIGNOLO's signature on other documents that I have reviewed.

31. Record checks with The Florida Bar, New York State Bar, and the Connecticut Statewide Grievance Committee have revealed that VIGNOLO has not been licensed to practice law by any of those jurisdictions.

CONCLUSION

32. Based on the information contained in this affidavit, I believe that there is probable cause to believe that Jose Silvio VIGNOLO, Yaakov ASSARAF, and others, have committed violations of Title 18, U.S.C., Sections 371 and 1546, by producing, possessing, and distributing fraudulent immigration documents, and by conspiring with each other and with others to do so.

                   FURTHER YOUR AFFIANT SAYETH NAUGHT

                   RICHARD S. BENDEL
                   Special Agent
                   U.S. Immigration and Naturalization Service

Sworn and subscribed before me this 26th day of June, 2000

LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE